**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **Edward L. Scherer;** | ) | |
| **Individually, and on behalf of all** | ) | |
| **others similarly situated,** | ) | **Civil Action** |
| **Plaintiffs,** | ) | **File No. 4:20-cv-01295** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Wells Fargo Bank, N.A.** | ) | **Jury Trial Demanded** |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' SECOND AMENDED ORIGINAL**
**CLASS ACTION COMPLAINT**

COME NOW PLAINTIFFS, Edward L. Scherer ("Mr. Scherer") and Donald Kowall ("Mr. Kowall") (together, the "Plaintiffs"), on behalf of themselves and the nationwide Class, and in the public interest, and bring this second amended class action complaint against Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo"). Plaintiffs would respectfully show the Honorable Court as follows:

**I.**
**INTRODUCTION**

1. At an unprecedented time of severe national need, Wells Fargo chooses privileged discriminatory policies driven by corporate greed over the recognized and urgent needs of America's small businesses.

2. Authorized by Congress and the President of the United States under the Coronavirus Aid, Relief, and Economic Security Act, H.R. 748 ("CARES Act")

1

and its loan programs to administer billions of dollars in federal funding to small businesses in a fair, equitable and uniform manner, Defendant implemented a loan process that unlawfully prioritized its existing business clients at the expense of not only its own clients without business checking accounts, but also other small businesses from applying for funds from the governmental loan programs.

3.      Nothing in the CARES Act authorizes or permits the Defendant to pick and choose who would gain access to, or benefit from, the federally backed lending program. And, the priority of access to these limited funds is material – the demand is overwhelming as America responds to the economic tsunami of COVID-19 upon small businesses.  There is no justification for requiring small businesses who did not have a Wells Fargo business checking account as of February 15, 2020, to go to the end of the line and suffer the inevitable consequences of the first-come-first-served system that has been implemented under the CARES Act.  It is no secret that the overwhelming and immediate demand for assistance under the CARES Act will cause the allocated $349 billion to quickly run out, if it has not already.  Further, Plaintiffs are unsure if the U.S. Government will replenish the PPP Loan fund once the original $349 billion is depleted.

4.      Plaintiffs Scherer and Kowall bring this action on behalf of themselves and their small businesses, and all others similarly situated, against Wells Fargo for violations of the CARES Act, the Small Business Administration's ("SBA") 7(A) loan program, 15 U.S.C. § 636(a), the Texas Deceptive Trade Practices Act

("DTPA") and other states' consumer protection statues, negligence, fraud, unjust enrichment, a declaratory judgment pursuant to 28 U.S.C. § 2201, and a preliminary and permanent injunction pursuant to 28 U.S.C. § 2202.

5.     The Paycheck Protection Program ("PPP"), which is part of the $2 trillion stimulus package created by the CARES Act in response to the COVID-19 pandemic signed into law on March 27, 2020, empowers lenders (and only lenders) to make available as much as $349 billion in government-guaranteed loans to cover eight weeks of payroll and other expenses for small businesses across the U.S.  In most cases, a large portion of these loans intend to be forgiven.

6.     Wells Fargo – creating an improper and unlawful restriction on PPP loans – is refusing to accept PPP loan applications unless the small business applicant had an established business checking account with Wells Fargo as of February 15, 2020.  Defendant is unlawfully prioritizing these existing customers who had a "Wells Fargo business checking account as of February 15, 2020.", and shutting out other businesses who qualify equally under the PPP and CARES Act.

7.     In essence, Wells Fargo denied those small businesses access to the PPP program that do not have a preexisting commercial banking relationship with the bank. Wells Fargo prohibited Plaintiffs from even applying for a PPP loan with Wells Fargo, despite otherwise meeting the statutory requirements for a PPP loan.

8.     Wells Fargo's purpose and motivation behind its discriminatory practice is transparent – it is prioritizing profits and its balance sheet by maximizing

its commissions under the PPP Loan program, supporting its preexisting customers, in many cases with preexisting commercial loans issued by Wells Fargo, through the PPP program at the expense of qualifying small businesses who do not have a prior and existing relationship with Wells Fargo.

9.     Senators Marco Rubio (R.-Fla.) and Ben Cardin (D.-Md.) have already chastised other banks, including Bank of America, for imposing criteria not found in the law and selectively choosing who can apply.  And, three additional Senators (Tim Kaine, Angus S. King, Jr., and Christopher A. Coons) have joined Senators Rubio and Cardin by issuing a letter to the American Bankers Association pointing to the same issue.

10.     Wells Fargo's discriminatory practices are abhorrent and in violation of federal law. In this time of critical and severe national need that the U.S. Government recognized and immediately acted upon, Wells Fargo's discriminatory practices can only be described as corporate greed, highly offensive and illegal.

**II.**
**JURISDICTION AND VENUE**

11.     Plaintiffs, on behalf of themselves and the nationwide Class, bring this action pursuant to the CARES Act, a federal statute.  Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1332(d). In addition to Plaintiff Scherer, there are members of the Class who are citizens of states other than

the state of citizenship of Defendant, and the amount in controversy exceeds five million ($5,000,000) dollars exclusive of interest and costs.

12.     Further, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Any state law claims alleged now, or in the future, are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue is proper in the United States District Court for the Southern District of Texas under 28 U.S.C. § 1391(a) and (c), as Wells Fargo conducts business in the State of Texas, and in this District.

### III.
### THE PARTIES

14.     Plaintiff, **Edward L. Scherer**, is a sole proprietor owning a small business concern.  Plaintiff resides in, and his business is located in, Harris County, Texas.  Plaintiff is a small business that qualifies as an eligible applicant for a PPP loan under the CARES Act.

15.     Plaintiff, **Donald Kowall**, is a self-employed small business owner. Plaintiff resides in, and his business is located in, Sacramento County, California. Plaintiff is a small business that qualifies as an eligible applicant for a PPP loan under the CARES Act.

16.     Defendant **Wells Fargo Bank, N.A.** is a national banking association organized under the laws of Delaware, with its principal executive offices at 101

North Phillips Avenue, Sioux Falls, South Dakota.  Wells Fargo has transacted and continues to transact business in this Southern District of Texas.

**IV.**
**FACTUAL ALLEGATIONS**

17.     The CARES Act is the largest economic relief bill in U.S. history and will allocate $2.2 trillion in support to individuals and businesses affected by the coronavirus pandemic and resulting economic downturn.

18.     As part of the relief provided, the CARES Act expands the eligibility criteria for borrowers to qualify for loans that are available through the SBA by adding the PPP to the SBA's gamut of loan programs.

19.     The PPP provides federally-guaranteed loans up to a maximum amount of $10 million to eligible businesses, which can be conditionally forgivable, to encourage businesses to retain employees through the COVID-19 crisis by assisting in the payment of certain operational costs. To accommodate for this SBA expansion, the CARES Act has authorized commitments to the SBA 7(a) loan program, as modified by the CARES Act, in the amount of $349 billion.

20.     Eligible individuals and entities under the PPP include small businesses and eligible nonprofit organization, Veterans organizations, and Tribal businesses described in the Small Business Act, as well as individuals who are self-employed or are independent contractors who meet program size standards.

21.    The SBA's interim final rule on the PPP provides the following

information as to who is eligible for a PPP loan:

> "You are eligible for a PPP loan if you have 500 or fewer
> employees whose principal place of residence is in the
> United States, or are a business that operates in a certain
> industry and meet the applicable SBA employee-based
> size standards for that industry, and:
>
> i. You are:
>
> A. A small business concern as defined in section 3 of the
> Small Business Act (15 USC 632), and subject to SBA's
> affiliation rules under 13 CFR121.301(f) unless
> specifically waived in the Act;
>
> B. A tax-exempt nonprofit organization described in
> section 501(c)(3) of the Internal Revenue Code (IRC), a
> tax-exempt veterans organization described in section
> 501(c)(19) of the IRC, Tribal business concern described
> in section 31(b)(2)(C) of the Small Business Act, or any
> other business; and
>
> ii. You were in operation on February 15, 2020 and either
> had employees for whom you paid salaries and payroll
> taxes or paid independent contractors, as reported on a
> Form 1099-MISC. You are also eligible for a PPP loan if
> you are an individual who operates under a sole
> proprietorship or as an independent contractor or eligible
> self-employed individual, you were in operation on
> February 15, 2020. You must also submit such
> documentation as is necessary to establish eligibility such
> as payroll processor records, payroll tax filings, or Form
> 1099-MISC, or income and expenses from a sole
> proprietorship. For borrowers that do not have any such
> documentation, the borrower must provide other
> supporting documentation, such as bank records,
> sufficient to demonstrate the qualifying payroll amount."

13 CFR Part 120, pp. 5-6.

22.     The "General Eligibility" section of the PPP loan lender application form lists only two requirements for a PPP loan to be approved:

- The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020 and had employees for whom the Applicant paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant, (3) the funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, and (4) the Applicant has not received another Paycheck Protection Program loan; and,

- The Applicant has certified to the Lender that it (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, meets the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.

SBA Form 2484

23.     Each Plaintiff is a "small business" as defined under the SBA guidelines, and qualifies as an eligible applicant for a PPP loan.

24.     Each Plaintiff did not have a business checking account with Wells Fargo as of February 15, 2020, and was thus ineligible to apply for a PPP loan under Wells Fargo's self-declared criterion that created an impermissible restriction upon, and violated, the CARES Act.

25.    Nothing in the CARES Act allows for the differentiation of a small business loan under the federal program between a bank's preexisting business clients and other businesses that were not active business checking account customers of Wells Fargo as of February 15, 2020. And, nothing in CARES Act allows Wells Fargo to determine who can participate in the federal program based on its own improper criteria, including its impermissible restriction that each Plaintiff must have been a client of Wells Fargo with an existing business checking account with Wells Fargo as of February 15, 2020.

26.    Although not a prerequisite to this litigation that needs to be stated, the purpose and motivation behind Wells Fargo's discriminatory practice is transparent. In light of the fact that PPP is a limited funding program, Wells Fargo has decided to prioritize its balance sheet by supporting preexisting loans issued by Wells Fargo through the PPP program at the expense of small businesses that do not have a lending or commercial banking relationship with Wells Fargo. Further, initial SBA loan approval numbers indicate that Wells Fargo is prioritizing loans that carry a higher commission percentage over loans that carry a lower commission percentage found at Section 1102(a) of the CARES Act.  Had Congress intended to allow banks like Wells Fargo to limit access to the PPP funding program to only those small businesses that had a preexisting borrowing or commercial banking relationship with the bank (or to prioritize PPP loans based upon the commission structure), Congress

would have said so. The purpose, however, of the PPP law is to assist **all** small business who qualify under the SBA rules and to provide equal access to those funds.

27.     Nevertheless, on its website, Wells Fargo states that eligibility is limited only to small businesses, including sole proprietors, independent contractors, self-employed individuals, nonprofit organizations, tribal business concerns, and Veterans' organizations, that: "… **Have a Wells Fargo business checking account as of February 15, 2020.**" [1]

28.     Indeed, U.S. Senator Marco Rubio criticized another large national bank (Bank of America) for a similar restrictive requirement, saying via Tweeter, "The requirement that a #SmallBusiness not just have a business account but also a loan or credit card is NOT in the law we wrote & passed or in the regulations." *See* the following:

---

[1] See attached **Exhibit – A**, *https://update.wf.com/coronavirus/paycheckprotectionprogram/* (last accessed 4/20/20).



29.     Similarly, Senator Ben Cardin issued the following Statement on

Launch of the Paycheck Protection Program:

> I am deeply troubled by reports of financial institutions
> turning away small businesses that desperately need
> capital through the Paycheck Protection Program. The
> small business provisions in the CARES Act were written
> to get funds into the hands of American small business
> owners as quickly as possible so they can keep employees
> on payroll and avoid financial ruin while we work to
> combat COVID-19. **Creating artificial barriers that
> block businesses from much-needed capital is redlining
> by another name**. I will continue working with the
> administration to ensure that small businesses in every
> community have access to the programs created by the
> CARES Act, including the emergency EIDL grant

program and the Paycheck Protection Program. [emphasis
supplied].

30.     Further, on April 9, 2020, three additional Senators (Tim Kaine, Angus

S. King, Jr., and Christopher A. Coons) have joined Senators Rubio and Cardin by

issuing a letter to the American Bankers Association pointing to the same issue.[2]

31.     Wells Fargo, like Bank of America, is engaging in unacceptable,

shameless and brazen behavior it knows violates the statute.  In case Wells Fargo

believes to be on the right side of the law, the above U.S. Senators (the very authors

of the CARES Act themselves), could not have stated it more plainly that requiring

PPP loan applicants to have a preexisting business relationship with a bank violates

the statute because such a requirement was neither intended nor placed in the

CARES Act.

32.     As further evidence of Wells Fargo's illegal behavior, it is now under

investigation by federal and state governments in its administration of the PPP loan

program.

## V.
## CLASS ACTION ALLEGATIONS

33.     Plaintiffs incorporate each and every allegation contained in the

preceding paragraphs by reference as if fully set forth herein.

34.     Plaintiffs, in accordance with Fed. R. Civ. P. 23(b)(1), (b)(2) and (b)(3),

bring this action on behalf of themselves and as members of the Class defined below.

---

[2] See attached **Exhibit – B**.

35.     The Class consists of (a) all individuals or entities who qualify for a loan under the PPP and (b) who were prevented from even applying for a PPP loan by Wells Fargo solely because they do not have a pre-existing business checking and/or debt relationship with Wells Fargo as of February 15, 2020.

36.     The Class is so numerous that joinder of all members is impracticable. See Fed. R.  Civ. P. 23(a)(1). The Class consists of individuals and companies throughout the country.

37.     There are questions of law and fact common to the Class (or to a sub-class, should the Court decide to limit or change the class definition during pendency of this class action). See Fed. R. Civ. P. 23(a)(2). These common questions include, but are not limited to:

> A.     Whether Defendant wrongly imposed additional requirements for PPP loans for a financial purposes purpose not iterated in the CARES Act; thereby, penalizing small businesses that the U.S. Government intended to benefit from PPP loans for not having a business checking account and/or debt relationship with the Defendant;
>
> B.     Whether Defendant wrongly denied qualifying small businesses from applying to Wells Fargo for PPP loans;
>
> C.     Whether the claims alleged herein can be stated against the Defendant by this Class based on the facts alleged in this complaint;
>
> D.     Whether Defendant purposely designed, employed and maintained a system that was inadequate to protect small businesses qualified to receive a PPP loan;

E.      Whether Defendant failed to design, employ and maintain a system that was adequate to protect small businesses qualified to receive a PPP loan;

F.      Whether Defendant made representations on its website to discourage and/or disallow small businesses that did not have a prior business relationship (or at least a business bank account with Wells Fargo as of February 15, 2020) from receiving a PPP loan;

G.      Whether Defendant's actions and / or omissions violated the CARES Act;

H.      Whether Defendant's actions and / or omissions violated the Texas DTPA;

I.      Whether Defendant's actions and / or omissions violated the consumer protection acts of states other than Texas;

J.      Whether Defendant's actions and / or omissions were fraudulent and/or negligent, and whether Defendant was unjustly enriched;

K.      Whether Defendant's actions and / or omissions caused small businesses that did not have a prior business relationship (or at least a business bank account with Wells Fargo as of February 15, 2020) to miss the opportunity of timely applying for, and receiving, a PPP loan.

38.     Plaintiffs' claims, which arise out of Wells Fargo's prohibition of qualifying small businesses to apply for PPP loans with Wells Fargo, are typical of the claims of the Class members. Likewise, Defendant's defenses to each Plaintiff's claims – both the myriad of legal defenses that can be anticipated, together with the factual defenses – are typical of the defenses to the Class claims. See Fed. R. Civ. P. 23(a)(3).

39.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. See Fed. R. Civ. P. 23(a)(4). Each Plaintiff is articulate and knowledgeable about his claims, and fully able to describe them. There are no conflicts of interest between either Plaintiff with respect to the interests of the Class members. Each Plaintiff, like the Class members, has suffered tremendous financial loss as a result of Defendant's brazen acts.

40.     Counsel for Plaintiffs is well-suited to represent their interests and the interests of the Class. Each Plaintiff has retained competent counsel experienced in complex federal litigation and class actions (including class actions under other federal statutes such as the Fair Labor Standards Act and the Fair Credit Reporting Act), who will vigorously and competently prosecute the claims that Plaintiffs and Class members assert in this litigation.

41.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1). Prosecuting separate actions would create a risk of adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

42.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2). Wells Fargo will continue to commit the violations alleged, and the members of the Class and the general public will continue to be unfairly denied access to critical relief that they are entitled to under the CARES Act's PPP. Wells Fargo has acted and refused

to act on grounds that apply generally to the Class so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole. Time is of the essence, as the PPP funds are limited and are to be distributed on a first-come-first-served basis.

43.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3). The questions of law or fact common to the members of the Class, described above, predominate over any questions affecting only individual members.

44.     Due to the individual amount at issue as to each Class member, as well as the cost and difficulty in litigating each case separately, the Class members have insufficient interest in individually controlling the prosecution of separate actions. See Fed. R. Civ. P. 23(b)(3)(A).  This is especially true in the present economic environment that leaves many small businesses struggling and with dwindling financial resources to commence litigation individually.

45.     The Class has not previously litigated the claims asserted in this complaint. See Fed. R. Civ. P. 23(b)(3)(B).

46.     This Court is more than an appropriate forum for the litigation of the Class claims.  Counsel for Class Plaintiffs has litigated, for many years, before most of the Honorable Judges in the Southern District of Texas, and each is highly qualified to serve and dispense the justice this matter demands in this unusual time in our country.

47.     Any difficulties that might be incurred in the management of this class action are insubstantial. See Fed. R. Civ. P. 23(b)(3)(D).

48.     For these reasons, a class action is clearly superior to other available methods for the fair and efficient adjudication of this controversy.  Certification is thus appropriate under Rule 23(b)(1) or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**VI.**
**CLAIMS FOR RELIEF**

**COUNT ONE:**
**Violations of the CARES Act, H.R. 748**

49.     Plaintiffs allege and incorporate by reference all allegations asserted in the previous paragraphs.

50.     The CARES Act, a $2 trillion stimulus package in response to the COVID-19 pandemic that was signed in to law on March 27, 2020, includes the PPP, which empowers lenders to make available as much as $349 billion in government-guaranteed loans to cover eight weeks of payroll and other expenses.

51.     There is an implied cause of action arising under the CARES Act.

52.     The CARES Act, along with the SBA's interim final rule on the PPP, provides the sole eligibility requirements to apply for a PPP loan.

53.     The purpose of the CARES Act's PPP is to assist ***all*** (and not just some) entities and individuals who qualify and to provide equal access to those funds on a first-come-first-served basis.

54.     In flagrant disregard of the CARES Act, Wells Fargo has chosen to unjustly enrich and protect itself through the PPP program – rather than intended entities and individuals – by creating an unnecessary requirement to apply for a PPP loan from it – a preexisting business checking account and / or a commercial relationship with Wells Fargo.

55.     Plaintiffs and members of the Class met the eligibility requirements for a PPP loan. Nevertheless, Wells Fargo refused to allow Plaintiffs and similarly situated members of the Class to apply for a PPP loan because they did not have a preexisting commercial banking and / or lending relationship with Wells Fargo.

56.     As a direct and proximate result of Wells Fargo's wrongful actions, Plaintiffs and Class members have suffered damages up to $10 million each due their inability to apply for a PPP loan with Wells Fargo despite being otherwise eligible to apply.

## COUNT TWO:
## Violations of the SBA's 7(a) Loan Program, 15 U.S.C. 636(a)

57.     Plaintiffs allege and incorporate by reference all allegations asserted in the previous paragraphs.

58.     The SBA's 7(a) loan program is designed to help start-up and existing small businesses obtain financing when they might not otherwise be eligible for business loans. Under the program, a participating lender executes the loan with the borrower according to specific SBA requirements.

59.     The PPP is part of the SBA's 7(a) loan program.

60.     There is an implied cause of action arising under the SBA's 7(a) loan program.

61.     In flagrant disregard for law, Wells Fargo has decided to unjustly enrich and protect itself through the SBA's 7(a) PPP program – rather than intended entities and individuals – by creating an unnecessary requirement to apply for a PPP loan from it – a preexisting commercial and / or lending relationship with Wells Fargo.

62.     Plaintiffs and members of the Class met the eligibility requirements for a PPP loan. Nevertheless, Wells Fargo refused to allow Plaintiffs and Class members to apply for a PPP loan because they did not have a preexisting business checking account and / or lending relationship with Wells Fargo as of February 15, 2020.

63.     As a direct and proximate result of Wells Fargo's wrongful actions, Plaintiffs and Class members have suffered damages up to $10 million each due their inability to apply for a PPP loan with Wells Fargo despite being otherwise eligible.

## COUNT THREE:
## Declaratory Judgment and Preliminary and Permanent Injunction
## Pursuant to 28 U.S.C. §§ 2201 and 2202

64.     Plaintiffs allege and incorporate by reference all allegations asserted in the previous paragraphs.

65.     There is an actual controversy between Wells Fargo and the Class (including Plaintiffs) concerning the application of the PPP.

66.     Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and

legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

67.     Wells Fargo wrongfully prevented entities and individuals from applying for PPP loans from Wells Fargo, despite meeting all federally-imposed PPP loan eligibility requirements, for lack of a business and / or lending relationship with Wells Fargo.

68.     Accordingly, Plaintiffs and members of the Class seek a declaration that Wells Fargo's requirement that applicants have a business and / or lending relationship with Wells Fargo in order to apply for a PPP loan be declared void, invalid and unenforceable.

69.     Plaintiffs and members of the Class are likely to succeed on the merits of their causes of action set forth in Counts I-III.

70.     Plaintiffs and members of the Class have suffered and will continue to suffer irreparable harm in the absence of injunctive relief enjoining Wells Fargo from depriving Plaintiffs and the Class from the rights and benefits bestowed by the CARES Act and its regulations, and do not have an adequate remedy at law.

71.     Wells Fargo will suffer no injury if the Court grants the preliminary injunctive relief that Plaintiffs and the Class seek.

72.     The public interest will be served if the Court grants the preliminary injunctive relief that Plaintiffs and members of the Class seek.

## COUNT FOUR:
## Violation of State Consumer Protection Statutes

73.     Plaintiffs allege and incorporate by reference all allegations asserted in the previous paragraphs.

74.     Defendant's acts and/or omissions violated the following state consumer protection statutes:

    a.  The Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-5(2), (3), (5), (7), and (27), *et seq.*;

    b.  The Arizona Consumer Fraud Act, A.R.S. § 44-1522;

    c.  The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq., and the California Unfair Competition Law, Cal. Bus. and Prof. Code, § 17200, *et seq.*;

    d.  The Colorado Consumer Protection Act, Col. Rev. Stat. Ann. §§ 6-1-105(1)(b), (c), (e) and (g), *et seq.*;

    e.  The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), *et seq.*;

    f.  The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), *et seq.*;

    g.  The Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), et seq., and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. § 480-2(a), *et seq.*;

    h.  The Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1405(A), *et seq.*;

    i.  The Maryland Consumer Protection Act, Md. Code Commercial Law, §§ 13-301(1) and (2)(i)-(ii), and (iv), (5)(i), and (9)(i), *et seq.*;

    j.  The Michigan Consumer Protection Act, M.C.P.L.A. §§445.903(1)(c)(e), (s) and (cc), *et seq.*;

k.   The Mississippi Consumer Protect Act, Miss. Code Ann. §§ 75-24-5(1), (2)(b), (c), (e), and (g), *et seq.*;

l.   The Missouri Merchandising Practices Act, Mo. Ann. Stat. §407.020(1), *et seq.*;

m.   The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), *et seq.*;

n.   The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57- 12-2(D)(5)(7) and (14) and 57-12-3, *et seq.*;

o.   The New York Business Law, N.Y. Gen. Bus. Law § 349(a);

p.   The North Carolina Unfair Trade Practices Act, N.C.G.S.A. § 75-1.1(a), *et seq.*;

q.   The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§1345.02(A) and (B)(1) and (2), *et seq.*;

r.   The Oregon Unfair Trade Practices Act, Or. Rev. Stat. §§646.608(1)(e)(g) and (u), *et seq.*;

s.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v)(vii) and (xxi), and 201-3, *et seq.*;

t.   The Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104(a), (b)(2), (3), (5), and (7), *et seq.*;

u.   The Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

v.   The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1), (2)(a), (b), and (i), *et seq.*;

w.   The Washington Consumer Protection Act, Wash. Rev. Code §19.86.020, *et seq.*; and

x.   The West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, *et seq.*

75.     Plaintiffs and members of the Class seek all remedies available under their respective state consumer protection statutes, including but not limited to (a) damages suffered by each Plaintiff and each Class member as alleged above, to include disgorgement of all profits accruing to Wells Fargo because of its deceptive trade practices, (b) equitable relief, including injunctive relief; (c) treble damages and (d) reasonable attorneys' fees and costs.

## COUNT FIVE:
### Negligence

76.     Plaintiffs allege and incorporate by reference all allegations asserted in the previous paragraphs.

77.     Defendant's acts and/or omissions were negligent.

78.     The injury and harm that Plaintiffs and Class members suffered was the direct and proximate result of Wells Fargo's negligent conduct.

79.     Accordingly, Plaintiffs and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT SIX:
### Fraud

80.     Plaintiffs allege and incorporate by reference all allegations asserted in the previous paragraphs.

81.     Defendant's acts and/or omissions were fraudulent.

82.     The injury and harm that Plaintiffs and Class members suffered was the direct and proximate result of Wells Fargo's fraudulent conduct.

83.     Accordingly, Plaintiffs and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT SEVEN:
## Unjust Enrichment

84.     Plaintiffs allege and incorporate by reference all allegations asserted in the previous paragraphs.

85.     Plaintiffs and members of the Class conferred a benefit on Wells Fargo.

86.     Defendant knew that Plaintiffs and the Class members conferred a benefit on Defendant.

87.     Wells Fargo profited from the PPP loan program at the expense of Plaintiffs and members of the Class.

88.     Wells Fargo acquired said profits through inequitable means because it failed to follow the 'first-come first-served' requirement of the PPP loan program, and instead prioritized loans on an alternate basis to maximize its commissions under the PPP loan program.

89.     Had Plaintiffs and Class members known that Wells Fargo would not follow the 'first-come first-served' requirement of the PPP loan program, they would have sought PPP loans elsewhere in time to secure PPP loans before the funding was depleted.

90.     Once the PPP loan funds were depleted, Plaintiffs and Class members had no adequate remedy at law.

91.     Under the circumstances, it would be unjust for Wells Fargo to be permitted to retain any of the benefits that Plaintiffs and Class members conferred on Defendant.

92.     Wells Fargo should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiffs and Class members proceeds (i.e., commissions) that it unjustly received from the PPP loan program.  In the alternative, Defendant should be compelled to refund to the federal government any amounts it unjustly received from the PPP loan program.

## VII.
## DEMAND FOR JURY TRIAL

93.     Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs and members of the Class herein make formal demand for a trial by jury.

## VIII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class (and any future sub-classes), pray for the following relief from this Honorable Court:

a. Pursuant to Fed. R. Civ. P. 23, certify this civil action as a class action, designate Plaintiffs as Class representatives, and appoint counsel for Plaintiffs as Class Counsel;

b. Preliminarily and permanently enjoin Wells Fargo from engaging in the wrongful and unlawful conduct alleged herein, viz., depriving Plaintiffs and members of the Class from the rights and benefits bestowed by the CARES Act and its regulations;

c. Direct Wells Fargo to make available to Plaintiffs and to members of the Class all of the rights and benefits under the CARES Act and its regulations;

d. Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and to each member of the Class in an amount to be determined at trial, for the acts complained of herein;

e. Award Plaintiffs and members of the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

f. On behalf of Plaintiffs and members of the Class, enter an injunction against Wells Fargo's Deceptive Trade Practices and award the Plaintiffs and all Class members appropriate monetary relief, including actual and statutory damages, treble damages, restitution, disgorgement; and attorney's fees and costs;

g. Award Plaintiffs and members of the Class all damages resulting from Wells Fargo's negligent and/or fraudulent acts alleged in this civil action;

h. Award Plaintiffs and members of the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and,

i. Grant all other and further relief to which Plaintiffs and members of the Class are entitled by law or in equity as may be determined by the Court to be just, equitable and proper.

Respectfully submitted,

**ALI  S. AHMED, P.C.**

By:   /s/ *Salar Ali Ahmed*
        **Salar Ali Ahmed**
        Federal Id. No. 32323
        State Bar No. 24000342
        430 W. Bell Street
        Houston, Texas 77019
        Telephone: (713) 898-0982
        Email: aahmedlaw@gmail.com

**Attorney for Plaintiffs**
**Edward L. Scherer and**
**Donald Kowall,**
**and for Members of**
**the nationwide Class**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that pursuant to S.D. Tex. L. R. 5.1, a true and correct copy of the foregoing was forwarded on May 12, 2020, via the ECF system of the United States District Court for the Southern District of Texas to all parties via their counsel.

        /s/ *Salar Ali Ahmed*
        **Salar Ali Ahmed**