# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **Edward L. Scherer and Donald Kowall, individually, and on behalf of all others similar situated,** | ) ) ) | |
| | ) | **Civil Action** |
| **Plaintiffs,** | ) | **File No. 4:20-cv-01295** |
| **v.** | ) | |
| **Wells Fargo Bank, N.A.,** | ) ) | |
| **Defendant.** | ) ) ) | |

### Wells Fargo Bank, N.A.'s Motion to
### <u>Dismiss Plaintiffs' Complaints</u>

May 26, 2020

## TABLE OF CONTENTS

**Page**

SUMMARY OF MOTION ................................................................1

BACKGROUND AND ALLEGATIONS OF THE COMPLAINT ........................5

ARGUMENT ..........................................................................6

I.     PLAINTIFFS HAVE NO PRIVATE RIGHT OF ACTION UNDER
       THE CARES ACT..............................................................7

II.    PLAINTIFFS HAVE NOT PLED ANY VIOLATION OF THE
       CARES ACT. ................................................................11

III.   PLAINTIFFS HAVE NOT PLED THAT WELLS FARGO CAUSED
       THEM ANY HARM. ...........................................................14

IV.    PLAINTIFFS HAVE NOT PLED THE REQUIRED ELEMENTS OF
       THEIR NEW STATE LAW CLAIMS...............................................15

CONCLUSION .......................................................................20

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") hereby moves for dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF MOTION

Plaintiffs' Second Amended Complaint (ECF No. 25) was filed without the required leave to amend from the Court or consent by Wells Fargo and therefore is without legal effect and should be stricken.  *See U.S. ex rel. Mathews* v. *HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003) (holding amended complaint filed in violation of Federal Rule of Civil Procedure 15(a) had no legal effect).  Even if leave to amend had been requested and granted, the Second Amended Complaint should nevertheless still be dismissed for the same shortcomings that doomed plaintiffs' First Amended Complaint.  (ECF No. 8.)  That is, both complaints wholly fail to state any claim for relief or allege wrongful conduct or actionable injury upon which a lawsuit could legitimately be pursued.[1]  Furthermore, because this is plaintiffs' third try to plead an actionable lawsuit, the dismissal should be with prejudice.

---

[1]     On May 15, 2020, the Court denied Wells Fargo's initial Motion to Dismiss the First Amended Complaint as moot because plaintiffs had filed, a few days earlier, their Second Amended Complaint.  (Order, ECF No. 27.)  Wells Fargo disagrees with this order because the Second Amended Complaint was a legal nullity.  Nevertheless, because both complaints suffer from the same dispositive deficiencies, and to avoid unnecessary motion practice, Wells Fargo is filing this Motion to Dismiss in the alternative to dismiss either the First Amended Complaint or the Second Amended Complaint, depending on which complaint is ultimately treated as the operative complaint by the Court.

Congress created the Paycheck Protection Program ("PPP") as part of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136 ("CARES Act") to assist small businesses facing hardship during the global COVID-19 pandemic. The PPP provides $659 billion in funding for loans to help small businesses meet payroll and cover other expenses. The loans, which are forgivable and guaranteed by the Small Business Administration ("SBA"), are not made by the federal government or the SBA, but by private lenders like Wells Fargo. No bank is required to take part in the PPP, but—in order to help small businesses—Wells Fargo elected to participate. Wells Fargo also announced that it would not keep any fees earned from PPP loans.

Beyond the basic eligibility requirements set forth in the CARES Act and the SBA's Interim Final Rule, 85. Fed. Reg. 20811 ("IFR"), Wells Fargo imposed an additional requirement on PPP applicants who chose to apply through Wells Fargo: that they had a Wells Fargo business checking account as of February 15, 2020. (Am. Compl. ("AC") ¶ 6, Ex. A, ECF No. 8; Second Am. Compl. ("SAC") ¶ 6, Ex. A, ECF No. 25.) Wells Fargo did so for very good reasons. By prioritizing applications from existing customers who already have gone through anti-fraud and anti-money laundering due diligence, Wells Fargo could "expedite the processing of loan applications"—which is both "more efficient for [its] system, and potentially for the overall CARES Act scheme." *Profiles, Inc.* v. *Bank of Am. Corp.*, 2020 WL

1849710, at \*12 (D. Md. Apr. 13, 2020).  Plaintiffs now seek significant damages and injunctive relief against the bank, relying on a purported implied private right of action in the CARES Act.  Plaintiffs fail to state a claim and the First Amended Complaint (as well as the Second Amended Complaint, if it is not stricken) should be dismissed with prejudice for multiple reasons.

*First*, there is no private right of action under the CARES Act.  The only court to have addressed this issue to date held that the CARES Act does not provide an express private right of action and contains no rights-creating language that could rebut the presumption that Congress did not intend to create an *implied* private right of action.  *Id.* at \*5–7.  To the contrary, the CARES Act modifies (but does not purport to transform) the Small Business Act, which courts consistently have held lacks an implied private right of action.

*Second*, plaintiffs have not pled any violation of the CARES Act.  Nothing in the Act or the SBA's IFR prohibits lenders from establishing lender-specific eligibility requirements for PPP loan applicants.  Indeed, a previous version of the CARES Act stated that "a lender shall *only* consider" the criteria set forth in the statute; "that Congress considered including the word 'only' in a previous version . . . that failed to win approval in a Senate committee, suggests, at the very least, that the Court should not read that word back into the statute."  *Id.* at \*7; *see* S. 3548, 116th Cong. § 1102(d)(2)(B) (Mar. 19, 2020).

*Third*, plaintiffs fail to plead that Wells Fargo caused them any harm.  They baldly assert that "[p]laintiffs and Class members have suffered damages up to $10 million each due [*sic*] their inability to apply for a PPP loan with Wells Fargo." (AC ¶¶ 54, 61; SAC ¶¶ 56, 63.)  This "naked assertion[]" of harm falls far short of meeting plaintiffs' pleading burden.  *Doe* v. *Robertson*, 751 F.3d 383, 387 (5th Cir. 2014) (citation omitted).  In denying plaintiffs' request for a temporary restraining order ("TRO"), this Court held that plaintiffs failed to show irreparable harm because they "fail to explain why [they] could not obtain loans under the PPP" from one of the thousands of other PPP lenders.  (Order at 3, ECF No. 20 ("TRO Order").)  Indeed, Congress recently replenished the PPP fund and plaintiffs therefore had (and have) the opportunity to apply for a PPP loan from many of the thousands of other lending institutions besides Wells Fargo that offer PPP loans.  Because plaintiffs have failed to allege any facts to show that they actually were deprived of an opportunity to apply for or receive a PPP loan, they have not plausibly pled that Wells Fargo caused them any harm and their complaint must be dismissed.

Plaintiffs' Second Amended Complaint does nothing to cure these threshold legal defects.  Instead, plaintiffs attempt to sidestep the lack of a private right of action under the CARES Act by bringing common law claims for negligence, fraud, and unjust enrichment, and claims based on the consumer protection laws of 24 states.  (SAC ¶¶ 74-75.)  Because this complaint was filed without leave or consent,

it should be stricken.  Regardless, the complaint should be dismissed for the same reasons as the First Amended Complaint and because plaintiffs plead *no* facts to support any of the state law claims.

## BACKGROUND AND ALLEGATIONS OF THE COMPLAINT

The CARES Act amends certain provisions of the Small Business Act, 15 U.S.C. § 636, to create the PPP and "provide relief to America's small businesses expeditiously" in the form of guaranteed loans.  IFR, 85 Fed. Reg. at 20811.  In plaintiffs' words, the PPP "empowers" participating lenders to make "government-guaranteed loans to cover eight weeks of payroll and other expenses for small businesses across the U.S." (AC ¶ 5; SAC ¶ 5.)

On April 5, 2020, Wells Fargo announced that it was planning "to distribute a total of $10 billion to small business customers under the requirements of the PPP"; that it would focus on serving nonprofits and businesses with under 50 employees, which had "fewer resources" than other businesses; and that it would not retain fees generated from PPP loans.[2]

On April 11, plaintiffs filed their original complaint and a request for preliminary injunction. (Compl., ECF No. 1.)  The Court denied the request for lack

---

[2]    *Wells Fargo Receives Strong Interest in the Paycheck Protection Program*, WELLS FARGO NEWSROOM (Apr. 5, 2020), https://newsroom.wf.com/press-release/community-banking-and-small-business/wells-fargo-receives-strong-interest-paycheck.

of notice, sufficient authority, and a proposed order.  (Order, ECF No. 7.)   On April 20, plaintiffs filed the First Amended Complaint, which contends that the CARES Act prohibits PPP lenders from imposing *any* eligibility criteria on a loan applicant beyond that the business was in operation and paid employees on February 15, 2020.  (AC ¶¶ 20–21, 50; *see also* SAC ¶¶ 21–22, 52.)  Plaintiffs seek damages and an injunction under the Act based solely on their allegation that Wells Fargo required PPP applicants to "[h]ave a Wells Fargo business checking account as of February 15, 2020."  (AC ¶¶ 26, 47–70, Ex. A; SAC ¶¶ 27, 49–72, Ex. A.)

Plaintiffs also filed a motion for a TRO on April 22.  (Mot. for TRO & Prelim. Inj., ECF No. 9 ("TRO Mot.").)   On April 29, the Court denied the temporary restraining order because plaintiffs failed to show a subtantial threat of irreparable injury.  (TRO Order at 3.)   On May 8, Wells Fargo moved to dismiss the First Amended Complaint.  (ECF No. 23.)  Without seeking leave or consent, plaintiffs filed a Second Amended Complaint on May 12 (ECF No. 25), which failed to address any of the deficiencies Wells Fargo identified in its motion to dismiss but instead added multiple state law claims.  Remarkably, plaintiffs pled no additional facts to support these claims.

## ARGUMENT

As an initial matter, Plaintiffs' Second Amended Complaint is a legal nullity because it was filed without the required leave of court, and the Court should strike

it.  *See* Fed. R. Civ. P. 15(a); *HealthSouth Corp.*, 332 F.3d at 295 ("[I]f an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect.") (citation omitted). Even if the Second Amended Complaint had been properly filed, however, both it and the First Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because they fail to state any claim for relief.  Though courts must accept all well-pled factual allegations as true on a motion to dismiss, a complaint based on "conclusory allegations or legal conclusions masquerading as factual conclusions" cannot survive a motion to dismiss.  *Taylor* v. *Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citation omitted).

# I.    PLAINTIFFS HAVE NO PRIVATE RIGHT OF ACTION UNDER THE CARES ACT.

"[I]dentif[ying] a private right of action" is a "threshold" requirement "[t]o raise a claim in federal court."  *Harris Cty.* v. *MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015).  Plaintiffs' federal claims—for alleged violations of the CARES Act (Count One) and the SBA loan program implementing the CARES Act (Count Two), and for injunctive relief (Count Three) (AC ¶¶ 47-70; SAC ¶¶ 49-72)—all rely on a

purported private right of action under the CARES Act.[3]  Because the Act does not

provide plaintiffs with a private right of action, plaintiffs fail to state a claim.

There is no dispute that the CARES Act does not provide an *express* private

right of action. *See Profiles*, 2020 WL 1849710, at *4, 6–7; (AC ¶ 49 (alleging only

an "implied" private right of action under the CARES Act); SAC ¶ 51 (same).)

Plaintiffs must therefore identify an *implied* private right of action, but doing so is a

formidable task:  the Court "begin[s] with the standard presumption that Congress

did not intend to create a private right of action," and plaintiffs "bear[] the relatively

heavy burden of demonstrating that Congress affirmatively contemplated private

enforcement when it passed the relevant statute." *Lundeen* v. *Mineta*, 291 F.3d 300,

311 (5th Cir. 2002) (internal quotation marks omitted).  To meet this burden,

plaintiffs must show that Congress's intent to imply a private right of action was

manifested "in *clear and unambiguous terms*." *Gonzaga Univ.* v. *Doe*, 536 U.S.

273, 290 (2002) (emphasis added)*.*  As explained by the Supreme Court, "[i]t is

logical . . . to assume that Congress will be explicit if it intends to create a private

cause of action," *Ziglar* v. *Abbasi*, 137 S. Ct. 1843, 1856 (2017), and Congress must

demonstrate an "intent to create not just a private right but also a private remedy."

---

[3]     To the extent plaintiffs rely on the Declaratory Judgment Act, 28 U.S.C.
§ 2201, that Act "alone does not create a federal cause of action" but merely affords
plaintiffs who already have a right of action additional remedies in federal court.
*MERSCORP*, 791 F.3d at 552.

*Alexander* v. *Sandoval*, 532 U.S. 275, 286 (2001).  Without a clear showing of Congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Id.* at 286–87.  Plaintiffs do not come close to overcoming the presumption against an implied private right of action, for four reasons.

*First*, there is no evidence in the text of the CARES Act that Congress intended for enforcement by private litigants.  That the Act makes a small business "eligible to receive a covered loan" if it meets certain criteria, 15 U.S.C. § 636(a)(36)(D)(i), does not demonstrate Congress's intent that the business should be able to sue a lender under the statute.  "Even assuming that the CARES Act grants PPP loan applicants with some statutory right to apply through a particular lender of choice (which is, itself, dubious), nothing in its text evidences Congress's intent to enable PPP loan applicants to bring civil suits against PPP lenders, to enforce that right."  *Profiles*, 2020 WL 1849710, at *7.[4]

*Second*, prior to passage of the CARES Act, courts—including in the Fifth Circuit—have uniformly held that the Small Business Act, which the CARES Act supplements but does not purport to rewrite, does not include an implied right of

---

[4]    The Fourth Circuit has denied plaintiffs' request for emergency injunctive relief pending appeal of the *Profiles* decision.  *See* Order, *Profiles Inc.* v. *Bank of Am. Corp.*, No. 20-1438 (4th Cir. May 1, 2020).

action. *Profiles*, 2020 WL 1849710, at \*6; *Searcy* v. *Houston Lighting & Power Co.*, 907 F.2d 562, 563–64 (5th Cir. 1990) (explaining that the Southern District of Texas had dismissed a claim under the Small Business Act because "that statute provides for no private cause of action").[5]

*Third*, the CARES Act and Small Business Act provide for enforcement by regulators, not private parties. For instance, under 15 U.S.C. § 650(c), the SBA Administrator has broad power to "institute a civil action" against a "small business lending company" for violations of the Small Business Act, which now includes the CARES Act's PPP provisions. This regulatory enforcement authority confirms the "view that Congress did not intend to create a separate private right of action in the CARES Act." *Profiles*, 2020 WL 1849710, at \*6.

*Fourth*, the SBA's IFR is not relevant to the determination of whether Congress intended to create an implied private right of action. *See Sandoval*, 532

---

[5]     *See Crandal* v. *Ball, Ball & Brosamer, Inc.*, 99 F.3d 907, 909 (9th Cir. 1996) ("Other circuits that have considered the question have unanimously agreed that the Small Business Act does not create a private right of action in individuals."); *Tectonics, Inc. of Fla.* v. *Castle Constr. Co., Inc.*, 753 F.2d 957, 960 (11th Cir. 1985) (citing *Royal Servs., Inc.* v. *Maintenance, Inc.*, 361 F.2d 86, 92 (5th Cir. 1966) for holding that "there was no intent [in the Small Business Act] to create civil rights of action in private persons"). In a brief submitted in this Court, the SBA has stated that "[i]t is well settled" that the Small Business Act does not "create a private right of action." Receiver's Memorandum of Law in Opposition to Roberto Tulio's Motion to Intervene, 2008 WL 2916816, *United States* v. *Sundance Venture Partners, LP* (S.D. Tex. May 28, 2008).

U.S. at 291 ("[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress."). Even if it were, however, nothing therein constitutes a "clear and unambiguous" statement of intent to create a private right of action. *Gonzaga*, 536 U.S. at 290. To the contrary, the IFR mentions only the *SBA*'s "enforcement" authority. *See* 85 Fed. Reg. at 20816 (referencing SBA "enforcement action").

## II.   PLAINTIFFS HAVE NOT PLED ANY VIOLATION OF THE CARES ACT.

Plaintiffs' claims also fail because they do not adequately plead that Wells Fargo violated the CARES Act by requiring that PPP applicants have business checking accounts with Wells Fargo as of February 15, 2020. Contrary to plaintiffs' accusation that this requirement is "abhorrent and in violation of federal law" (AC ¶ 10; SAC ¶ 10), Wells Fargo's PPP policies are both legal and reasonable.

The CARES Act requires lenders to "*consider*" two basic criteria—whether a borrower was in operation and paid employees on February 15, 2020—but the Act in no way prohibits lenders from considering other criteria. CARES Act, 15 U.S.C. § 636(a)(36)(F)(ii) (emphasis added). To the contrary, the Act "delegate[s] authority" to lenders "to make and approve covered loans." *Id.* As the court in *Profiles* explained, the Act does not prohibit banks "from considering other information when deciding from whom to accept applications, or in what order to process applications it accepts." 2020 WL 1849710, at *7.

In fact, an earlier version of the Act that Congress chose *not* to enact provided that "a lender shall *only* consider" the eligibility requirements in the statute. CARES Act, S. 3548, 116th Cong., § 1102(d)(2)(B) (March 19, 2020) (emphasis added). Congress's omission of the word "only" from the final Act is further evidence that it did not intend to restrict lenders from imposing additional lending criteria. *See INS* v. *Cardoza-Fonseca,* 480 U.S. 421, 442–43 (1987) ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language."). Indeed, "that Congress considered including the word 'only' in a previous version of the [CARES Act] that failed to win approval in a Senate committee, suggests, at the very least, that the Court should not read that word back into the statute." *Profiles*, 2020 WL 1849710, at *7.

Unable to find a violation in the text of the CARES Act or the IFR, plaintiffs instead rely on statements made by a handful of Senators—*after* enactment of the Act—against "restrictive requirement[s]" for PPP loan eligibility. (AC ¶¶ 27–29; SAC ¶¶ 28–30.) Such "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation." *Bruesewitz* v. *Wyeth LLC*, 562 U.S. 223, 242 (2011). Regardless, none of the statements that plaintiffs cite even hints that Wells Fargo's requirements are in any way *illegal* under the CARES Act, as opposed to merely undesirable in those Senators' views.

As a last resort, plaintiffs cite policy considerations, asserting that Wells Fargo's requirement has "no justification" and "flagrant[ly] disregard[s]" the Act's purpose. (AC ¶¶ 3, 52, 59; SAC ¶¶ 3, 54, 61.) That is not only insufficient to allege a violation of the CARES Act, but is also exactly backwards. As the *Profiles* court observed, "prioritizing existing borrowers"—as Wells Fargo and other (but by no means all) PPP lenders are doing—"will expedite the processing of loan applications" and is "more efficient for [the lender's] system, and potentially for the overall CARES Act scheme." 2020 WL 1849710, at *12. That is so because existing Wells Fargo customers have already been subjected to the due diligence required by federal anti-fraud and anti-money laundering laws. *See* IFR, 85 Fed. Reg. at 20815 ("PPP loans for existing customers will not require re-verification under applicable [Bank Secrecy Act] requirements"). Wells Fargo has designed its PPP process to provide funding to small businesses with the greatest possible speed.[6]

---

[6]    By contrast, plaintiffs' reading of the CARES Act (i) threatens to disincentivize lenders from participating in the PPP, which would "frustrate[]" "Congress's statutory scheme," *Profiles*, 2020 WL 1849710, at *11; and (ii) would prohibit banks from prioritizing local or "underserved" small businesses, contrary to the Act's "Sense of the Senate" provision. CARES Act, 5 U.S.C. § 636(a)(36)(P)(iv).

## III.   PLAINTIFFS HAVE NOT PLED THAT WELLS FARGO CAUSED THEM ANY HARM.

Plaintiffs seek two primary forms of relief:  an injunction and damages.  (AC at 20; SAC at 25.)  As a threshold matter, plaintiffs cannot obtain an injunction because a required element for that form of relief, whether preliminary or permanent, is "that remedies available at law, such as monetary damages, are inadequate to compensate" for the asserted injury.  *ITT Educ. Servs., Inc.* v. *Arce*, 533 F.3d 342, 347 (5th Cir. 2008).  Because plaintiffs' alleged inability to obtain a PPP loan and any resulting economic injury can be fully compensated through money damages, plaintiffs are not entitled to injunctive relief.[7]

Nor have plaintiffs pled that Wells Fargo caused them any harm.  Plaintiffs assert that they have suffered "damages up to $10 million each due [*sic*] their inability to apply for a PPP loan *with Wells Fargo*."  (AC ¶¶ 54, 61 (emphasis added); SAC ¶¶ 56, 63.)  This is an entirely "conclusory statement" that does not plead a plausible claim that Wells Fargo caused plaintiffs any damages.  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 561 (2007).  Indeed, plaintiffs say nothing about

---

[7]    In recent CARES Act-related litigation, courts have denied preliminary injunctive relief on this basis.  *See Legendary Transp., LLC* v. *JPMorgan Chase & Co.*, No. 2:20-cv-03636, slip op. at 5–6 (C.D. Cal. Apr. 24, 2020) (injunctive relief inappropriate because harm is "pecuniary in nature"); Order at 2–3, *Outlet Tile Ctr.* v. *JPMorgan Chase & Co.*, No. 2:20-cv-03603 (C.D. Cal. Apr. 23, 2020) ("injunctive relief" inappropriate because injury "compensable in damages").

any alleged injury to their businesses as a result of their alleged inability to apply for a loan with Wells Fargo.  Further, plaintiffs plead no facts about their efforts to secure PPP funding from other lenders and, as this Court recognized in denying plaintiffs' motion for a temporary restraining order, plaintiffs can apply for loans through *thousands* of other PPP lenders.  *See* TRO Order at 3.[8]  As of the filing of this motion, billions of dollars in unclaimed PPP funding is still available.

Plaintiffs therefore fail to plead that their alleged harm was caused by Wells Fargo, or that this lawsuit is necessary to obtain the funding that they purport to seek.

## IV.   PLAINTIFFS HAVE NOT PLED THE REQUIRED ELEMENTS OF THEIR NEW STATE LAW CLAIMS.

In the Second Amended Complaint, plaintiffs tack on state law claims for fraud, negligence, unjust enrichment, and claims under the consumer protection laws of 24 states.  (*See* SAC ¶¶ 73–92.)  These claims—which, again, are not properly a part of this case and should be stricken, *see HealthSouth Corp.*, 332 F.3d at 295–96—are nothing more than an attempt to skirt the lack of a private right of action in the CARES Act.  If the Court were to consider these claims, it should still dismiss

---

[8]     To the extent that plaintiffs previously were "unsure" about whether additional PPP funding would be available through those lenders (AC ¶ 3; SAC ¶ 3), the additional $310 billion in PPP funding provided by Congress clears up any such uncertainty.  *See* Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a), 134 Stat. 620, 620 (Apr. 24, 2020).

the complaint because plaintiffs have failed to plead any of the elements of these claims.

**The New Claims All Fail Because Plaintiffs Fail To Plead Non-Disclosure, Wrongful Conduct, and Harm**.  Plaintiffs never assert that they did not know or were deceived about Wells Fargo's requirement that PPP loan applicants have a Wells Fargo business checking account.  Indeed, an exhibit to the complaint shows that requirement was public information.  (SAC ¶ 27, Ex. A.)  As explained above, plaintiffs have failed adequately to plead any injury (*see supra* at 14–15), and the only misconduct they allege is based on a misreading of the obligations imposed by the CARES Act (*see supra* at 11–13).   Because non-disclosure (or a misrepresentation), wrongful conduct, and harm are essential elements of the new claims, plaintiffs' failure to plead these elements dooms their claims.[9]

---

[9]     *See*, *e.g.*, *Gen. Capital Grp. Beteligungsberatung GMBH* v. *AT&T*, 407 S.W.3d 507, 510 (Tex. Ct. App. 2013) (recovery for fraud requires "proof that the defendant's alleged false representation caused the plaintiff injury"); *Bustamante* v. *Ponte*, 529 S.W.3d 447, 456 (Tex. 2017) (plaintiff in a negligence action must establish "a legal duty, a breach of that duty, and damages proximately caused by the breach"); *Heldenfels Bros., Inc.* v. *City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (unjust enrichment occurs "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage"); *Coghlan* v. *Aquasport Marine Corp.*, 73 F. Supp. 2d 769, 771 (S.D. Tex. 1999) ("Since the defendant in an unjust enrichment action is enriched at the expense of the plaintiff, the plaintiff necessarily suffers injury."); *Doe* v. *Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") action requires "false, misleading, or deceptive acts" which "constitute[] a producing cause of the consumer's damages."); *Meyer* v.

Plaintiffs have also failed to plead other required elements of these claims:

**Fraud**.  Plaintiffs' bare-bones allegations do not come close to meeting the pleading standard for fraud.  Plaintiffs simply assert that Wells Fargo's "acts and/or omissions were fraudulent" and that the injuries suffered were the "direct and proximate result" of the fraudulent conduct (SAC ¶¶ 81–82), but fail to make *any* specific allegations that Wells Fargo "made a representation to the plaintiff," that the "representation was material . . . and false," and that plaintiffs "relied on the representation." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd.* v. *Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010).  Rule 9(b) also requires plaintiffs specifically to allege the "time, place and contents of the false representations," *Williams* v. *WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (citation omitted), allegations entirely absent from plaintiffs' complaint.

**Negligence**.  Plaintiffs fail to allege any element of a negligence claim.  To state a claim for negligence, plaintiffs must plead that defendants owed and breached a legal duty to plaintiffs, which breach proximately caused damages.  *Bustamante*,

---

*Sprint Spectrum L.P.*, 200 P.3d 295, 299, 302 (Cal. 2009) (California Consumers Legal Remedies Act ("CLRA") proscribes "unfair and deceptive business practices" and "in order to bring a CLRA action . . . some kind of damage must result."); *Blue Cross & Blue Shield of N.J., Inc.* v. *Philip Morris USA Inc.*, 818 N.E.2d 1140, 1143 (N.Y. 2004) ("[T]o make out a valid [New York General Business Law] section 349 claim, a plaintiff must allege both a deceptive act . . . and that such act or practice resulted in actual injury to a plaintiff.").

529 S.W.3d at 456.  At the first step, plaintiffs fail to plead that Wells Fargo owed them a legal duty.  The CARES Act does not purport to require banks to issue loans to any borrower (*see supra* at 11–13), and plaintiffs have alleged no other facts giving rise to any relevant legal duty.  To the extent that plaintiffs are non-customers, such as plaintiff Scherer, Wells Fargo owes no duty as a matter of law:  "a bank owes no duty to someone who is not a customer and with whom the bank does not have a relationship." *Owens* v. *Comerica Bank*, 229 S.W.3d 544, 547 (Tex. Ct. App. 2007). Without having pled a legal duty, plaintiffs cannot demonstrate proximate causation—that a breach of a legal duty "was a substantial factor in bringing about the injuries." *IHS Cedars Treatment Ctr. of DeSoto, Texas, Inc.* v. *Mason*, 143 S.W.3d 794, 799 (Tex. 2004).

**Unjust Enrichment**.  Plaintiffs have failed to plead any element of an unjust enrichment claim. *See Heldenfels Bros.*, 832 S.W.2d at 41 (explaining that plaintiff may recover for unjust enrichment "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage").  Beyond a conclusory assertion (SAC ¶ 85), plaintiffs fail to identify any alleged benefit that they conferred on Wells Fargo.  Nor can they.  PPP lenders like Wells Fargo do not receive fees on loan applications that, like plaintiffs', were not granted, and Wells Fargo is not retaining fees. (*See supra* at 5.)  And, as described above, plaintiffs have not pled any wrongful conduct or harm.

**Claims Under Texas and California Consumer Protection Statutes.**

***Texas.***   To allege a violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), plaintiffs must plead that:  (1) they are consumers, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) those acts caused them damages.  *Boys Clubs of Greater Dallas*, 907 S.W.2d at 478.  Plaintiffs' failure to plead harm or deceptive conduct aside, the claim fails at the first step because plaintiffs are not consumers under the DTPA.  A "consumer" is an individual "who seeks or acquires by purchase or lease, any goods or services."  Tex. Bus. & Com. Code § 17.45(4).  But neither money nor loans qualify as "goods or services" under the Act.  *Riverside Nat'l Bank* v. *Lewis*, 603 S.W.2d 169, 174–75 (Tex. 1980).

***California.***   Plaintiffs' claim under the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*., fails for similar reasons, including because loans do not qualify as "goods" or "services" under the CLRA.  *See*, *e.g.*, *Griffin* v. *Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1054 (C.D. Cal. 2015).  And, to the extent plaintiffs seek damages, their claim is precluded because they failed to provide pre-suit notice to Wells Fargo of purported CLRA violations.  *See In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1178 (S.D. Cal. 2010).  Plaintiffs' claim under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, fares no better.  The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]."  *Id.* § 17200.  While a claim can proceed

-19-

under any of these three prongs, *see Shvarts* v. *Budget Grp., Inc.*, 97 Cal. Rptr. 2d 722, 725 (Cal. Ct. App. 2000), plaintiffs do not even bother to specify the prong(s) under which they are asserting a claim, let alone plead *any* facts supporting the elements of such a claim.[10]

## CONCLUSION

Plaintiffs fail to plead that they have an express or implied private right of action under the CARES Act, that Wells Fargo in any way violated the Act, or that Wells Fargo caused them any harm.  Plaintiffs also fail to plead the required elements of any of the additional state law claims asserted in their procedurally deficient Second Amended Complaint.  The Court should grant this motion and dismiss this action with prejudice.  Plaintiffs have made three attempts to state a claim; they do not deserve another.

---

[10]    Plaintiffs purport to bring claims under the laws of 22 other states to which they have pled no connection.  Although not yet settled in this Circuit, courts elsewhere have held that plaintiffs lack standing to assert such claims.  *See*, *e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1068–75 (N.D. Cal. 2015) ("[T]he Court . . . require[s] the Plaintiffs to present a named class member who possesses individual standing to assert each state law's claims against Defendants.").  Nevertheless, these claims all fail, too, because plaintiffs fail to plead non-disclosure, wrongful conduct, and harm.

Dated: May 26, 2020

Respectfully submitted,

 /s/ Charles Hampton
Charles B. Hampton
Attorney-in-Charge
Texas Bar No. 00793890
MCGUIREWOODS LLP
600 Travis St., Suite 7500
Houston, Texas 77002
(713) 353-6683 / (832) 214-9936 (Fax)
champton@mcguirewoods.com

Nicolas Bourtin
Of counsel
(admitted *pro hac vice*)
N.Y. Bar No. 2837128
SULLIVAN & CROWELL LLP
125 Broad Street
New York, NY 10004-2498
(212) 558-4000
bourtinn@sullcrom.com

Christopher M. Viapiano
Of counsel
(admitted *pro hac vice*)
D.C. Bar No. 500771
N.Y. Bar No. 4373536
SULLIVAN & CROWELL LLP
1700 New York Ave., N.W., Suite 700
Washington, DC 20006-5215
(202) 956-7500
viapianoc@sullcrom.com

Sverker K. Högberg
Of counsel
CA Bar No. 244640
(admitted *pro hac vice*)
SULLIVAN & CROWELL LLP
1870 Embarcadero Road
Palo Alto, CA 94303-3308
(650) 461-5600
hogbergs@sullcrom.com

ATTORNEYS FOR DEFENDANT
WELLS FARGO BANK, N.A.

## CERTIFICATE OF SERVICE

I certify that on May 26, 2020, all counsel of record are being served with a copy of this document via the Court's CM/ECF system.

By:  */s/ Charles Hampton*
Charles B. Hampton